## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PALO ALTO NETWORKS, INC., | Case No. 1:22-cv-02306-ER/SDA |
| Plaintiff, | |
| v. | |
| TAASERA LICENSING LLC and QUEST PATENT RESEARCH CORPORATION, | |
| Defendants. | |

## MEMORANDUM OF LAW IN IN REPLY TO PALO ALTO'S OPPOSITION TO QUEST PATENT RESEARCH CORPORATION'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, <u>TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT ................................................................................................................... 2

    A.    Palo Alto Does Not Dispute that this Court Lacks Subject Matter
        Jurisdiction Over Quest............................................................................................ 2

    B.    Taasera's Texas Patent Enforcement Activities Cannot be Imputed to
        Quest ........................................................................................................................ 2

        1.    An Element of Fraud or Injustice is Required for Alter Ego ...................... 3

        2.    Palo Alto Fails to Establish a Fraud Stemming from an Alleged
            Domination ................................................................................................ 4

        3.    Quest and Taasera Do Not Dominate Each Other ..................................... 5

    C.    The Complaint Should Be Dismissed for Failure to State a Claim Under
        Rule 12(b)(6)........................................................................................................... 8

III.    CONCLUSION ............................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adler*,
467 B.R. 279 (Bankr. E.D.N.Y. 2012)................................................................6, 7

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-MD-2481 (KBF), 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015)......................7

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
772 F. Supp. 1458 (D. Del. 1991)..............................................................4

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002)......................................................................4

*Bridgestone/Firestone, Inc. v. Recovery Credit–Servs., Inc.*,
98 F.3d 13 (2d Cir.1996).........................................................................6

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
491 B.R. 335 (S.D.N.Y. 2013).................................................................7

*Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*,
896 F. Supp. 2d 320 (S.D.N.Y. 2012).......................................................6

*Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*,
No. 09 Civ. 6148 (VM), 2012 WL 12932049 (S.D.N.Y. July 17, 2012) ................6

*Columbia Pictures Indus., Inc. v. Screen Gems Film Co.*,
No. 99 Civ. 4407, 2001 WL 1254838 (S.D.N.Y. Oct. 18, 2001) ...........................6

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
319 F.R.D. 269 (N.D. Cal. 2017)...............................................................9

*Dirs. Guild of Am., Inc. v. Garrison Prods., Inc.*,
733 F. Supp. 755 (S.D.N.Y. 1998)...........................................................6, 7

*E&E Co. v. London Luxury LLC*,
1:20-cv-09610, 2021 WL 5357474 (S.D.N.Y. Nov. 17, 2021) ...........................8, 9

*Evolve Techs., LLC v. Coil Winding Specialist, Inc.*,
No. 18 Civ. 00671, 2019 WL 1383272 (S.D. Cal. Mar. 27, 2019)....................9, 10

*Fina Research, S.A. v. Baroid Ltd.*,
141 F.3d 1479 (Fed. Cir. 1998)...............................................................2

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995)..................................................................4

*Handal & Morofsky, LLC v. Viatek Consumer Prods. Grp., Inc.*,
    No. 18 CIV. 1887 (ER), 2018 WL 5886122 (S.D.N.Y. Nov. 8, 2018) ...................4

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
    599 F.3d 1377 (Fed. Cir. 2010)..............................................................2

*Lopez v. Fluidra USA LLC*,
    No. 3:21-cv-00044, Dkt. 19, ¶ 21 (S.D. Cal. Mar. 26, 2021) ...................9

*Marine Midland Bank, N.A. v. Miller*¸
    664 F.2d 899 (2d Cir. 1981)..................................................................3

*Miramax Film Corp. v. Abraham*, No. 01 CV 5202 (GBD),
    2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) ......................................3

*PetEdge, Inc. v. Marketfleet Sourcing, Inc.*,
    No. 16-12562-FDS, 2017 WL 2983086 (D. Mass. July 12, 2017)...............9

*Pilot Inc. v. NOCO Co.*,
    No. CV-20-01452-PHX-SRB, 2021 WL 2188525 (D. Ariz. Feb. 12, 2021) .........9

*In re Platinum and Palladium Antitrust Litig.*,
    1:14-cv-9391-GHW, 2017 WL 1169626 ................................................3

*Tannerite Sports, LLC v. Jerent Enters., LLC*,
    No. 6:15-cv-00180-AA, 2016 WL 1737740 (D. Or. May 2, 2016)...............9

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..............................................................................5

*Universitas Educ., LLC v. Benistar*,
    No. 3:20-CV-00738 (JAM), 2021 WL 965794 (D. Conn. Mar. 15, 2021),
    reconsideration denied, No. 3:20-CV-738 (JAM), 2022 WL 801160 (D. Conn.
    Mar. 16, 2022)..................................................................................5

*Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*,
    No. 16-cv-13456, 2017 WL 4535290 (E.D. Mich. Oct. 11, 2017)...............9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 8

## I.      INTRODUCTION

Palo Alto attempts to manufacture jurisdiction where there is none by arguing that two separate and distinct entities are alter egos. Palo Alto admits that there is no subject matter jurisdiction over Quest as it does not even respond to Quest's motion on that point. Further, Palo Alto does not explain how, even if the Court were to find Quest and Taasera are alter egos, there would then be subject matter jurisdiction over Quest.

Palo Alto fails to explain how a finding of alter ego would impute Taasera's siloed efforts to Quest, as none of Palo Alto's alter ego arguments are even related to the enforcement of the Patents-in-Suit.

Quest and Taasera are not alter egos because Quest does not dominate Taasera in any way, and there is no fraud here.

.

Any attempt at arguing that Taasera would not be able to satisfy a hypothetical award of attorneys' fees is pure speculation by Palo Alto. Accordingly, the allegation that Taasera is undercapitalized fails to support an alter ego finding.

This action should also be dismissed under Federal Rule of Civil Procedure 12(b)(6) because, as Palo Alto admits, for each claim in the Amended Complaint only a single conclusory allegation stating that its products do not infringe a claim element is provided which is insufficient to state a claim in this District.

## II.     ARGUMENT

### A.     Palo Alto Does Not Dispute that this Court Lacks Subject Matter Jurisdiction Over Quest

As Palo Alto admits, the "pivotal question for the Court to resolve Quest's motion is whether Quest and Taasera are in fact alter egos of each other." Opp. at 5. That is because Palo Alto knows that, absent an alter ego finding, this Court does not have subject matter jurisdiction over Quest. The only way Palo Alto could keep Quest in this case is by attempting to impute activities of Taasera onto Quest (and vice versa for Taasera—by imputing Quest's contacts with New York onto Taasera for personal jurisdiction). But, as explained below, Quest is not the alter ego of Taasera.

The Amended Complaint should be dismissed because there is no case or controversy between Quest and Palo Alto concerning infringement of the Patents-in-Suit.

"[B]ecause [Quest has] no legal interest in the [Patents-in-Suit] and therefore could not bring suit for patent infringement, there [i]s no actual controversy between [the parties] that would support jurisdiction under the Declaratory Judgment Act." *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1480-81 (Fed. Cir. 1998). Further, Palo Alto does not dispute that Quest has never taken an affirmative act to enforce any right related to the Patents-in-Suit. Accordingly, the complaint for declaratory judgment should be dismissed. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010).

### B.     Taasera's Texas Patent Enforcement Activities Cannot be Imputed to Quest

The facts relied on by Palo Alto do not establish that Quest dominates Taasera or that there is a fraud or wrongdoing that results from the domination that harmed Palo Alto. Even if it had established that Quest and Taasera are alter egos, Palo Alto does not argue that any of Taasera's

patent enforcement activities in Texas should be imputed to Quest. Rather, it simply argues that the two are alter egos, without asserting which activities of Taasera should be imputed and why they would establish jurisdiction.

### 1.    An Element of Fraud or Injustice is Required for Alter Ego

The "lower" standard for alter ego jurisdiction argued by Palo Alto is related to a limited factual situation that is not present here. Opp. at 8-9. "At least two courts in this district observed that the question whether the same standard that governs the alter ego analysis for liability purposes controls for jurisdictional purpose[s] has not yet been addressed by the Second Circuit and that courts have taken a variety of approaches when confronted with this question." *In re Platinum and Palladium Antitrust Litig.,* 1:14-cv-9391-GHW, 2017 WL 1169626, at *47 n.21 S.D.N.Y. Mar. 28, 2017). *Marine Midland Bank, N.A. v. Miller¸* 664 F.2d 899, 903-04 (2d Cir. 1981), cited by Plaintiff, is related to the limited situation of when a corporation can be considered an alter ego of an *individual* for the purposes of invoking the "fiduciary shield" doctrine. *Id.* at *903 ("[i]n determining whether a corporation for which *an owner-employee* acts is really 'another,' it is sufficient to inquire whether the corporation is a real or shell entity.") (emphasis added). Similarly, *Miramax Film Corp. v. Abraham*, No. 01 CV 5202 (GBD), 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) considers only whether two companies are alter egos of an individual. *See In re Platinum and Palladium Antitrust Litig.*, 2017 WL 1169626, at *47 n.23 ("The Court does not read *Marine Midland* as establishing a less onerous standard applicable in *all cases* involving an alter ego analysis in the personal jurisdiction context.") (emphasis added). The issue of shielding an individual from jurisdiction in New York, where it would otherwise be proper, because the employee was acting in his corporate capacity is a far different inquiry from whether a foreign company, with no ties to New York, should have another company's contacts imputed to it.

3

Delaware and Texas also require a fraud element for an alter ego analysis, even in the jurisdictional context. "Under New York choice of law principles, "the law of the state of incorporation determines when the corporate form will be disregarded." *Handal & Morofsky, LLC v. Viatek Consumer Prods. Grp., Inc*., No. 18 CIV. 1887 (ER), 2018 WL 5886122, at *5 (S.D.N.Y. Nov. 8, 2018) citing *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1456 (2d Cir. 1995). Accordingly, the Court may decide that either Texas law or Delaware law applies in this case, as Quest has not disputed that the law of the state of incorporation may apply. In Texas, the "law presumes that two separate corporations are indeed distinct entities," and alter ego may be found for jurisdictional purposes only if there is evidence "that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent ***fraud or injustice***." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798-99 (Tex. 2002) (emphasis added). In Delaware, for jurisdiction "[u]nder the alter ego or piercing the corporate veil doctrine, courts will ignore the corporate boundaries between parent and subsidiary ***if fraud or inequity is shown***." *Applied Biosystems, Inc. v. Cruachem, Ltd*., 772 F. Supp. 1458, 1463 (D. Del. 1991) (emphasis added). Palo Alto's pleadings fail to meet the fraud element required by the alter ego law of Texas, Delaware, and New York.

### 2.    Palo Alto Fails to Establish a Fraud Stemming from an Alleged Domination

Palo Alto argues that the fraud prong is satisfied because "Quest intentionally undercapitalized Taasera in order to try and avoid adverse awards of attorneys' fees" is a far reach at best. Opp. at 11. This is an action for a declaratory judgment in which Palo Alto has not asserted a claim for damages. That there would even be an "adverse award of attorneys' fees" is entirely speculative as it presupposes that Taasera will engage in sanctionable conduct during the course of this litigation. Further, Palo Alto does not provide legal support suggesting lack of resources to

cover speculative attorney fees awards is considered "fraud." Rather, the *Universitas* case discusses the situation of a "prolific fraudster who has been convicted on seventy-six felony counts" and who was ordered to pay plaintiff millions of dollars of life insurance proceeds that he transferred to himself instead of paying to the rightful beneficiary. *Universitas Educ., LLC v. Benistar*, No. 3:20-CV-00738 (JAM), 2021 WL 965794, at *1 (D. Conn. Mar. 15, 2021), reconsideration denied, No. 3:20-CV-738 (JAM), 2022 WL 801160 (D. Conn. Mar. 16, 2022). Here, no judgment has ever been levied on Taasera, so there has been no fraud.

The statement fails to support Palo Alto's theory that Taasera is undercapitalized for multiple additional reasons. First, the statement relied on by Palo Alto from Quest's annual report does not suggest that Taasera is "undercapitalized." Instead, it states the opposite—that Quest's subsidiaries have valuable patent assets that would be used to cover a judgment. Dkt. 21-12 at 20. Second, the statement does not state that Taasera intentionally possesses only its patent assets. Taasera is a start-up software company barely a year old and has not yet made sales, thus limited financial resources at this stage is expected. Third, Palo Alto's argument that Taasera intends to avoid adverse attorney fee awards is not at all supported. Rather, the annual report clearly explains that any fees would be satisfied using the patent assets.

### 3.     Quest and Taasera Do Not Dominate Each Other

Not a single fact shows that the relationship between Quest and Taasera is anything other than a typical parent-subsidiary relationship. Activities consistent with the parent's and subsidiary's relationship should not give rise to a finding of an alter ego. *See United States v. Bestfoods*, 524 U.S. 51, 72 (1998).

First, Palo Alto refers to the statement made in Quest's annual report regarding patent enforcement and litigation, but as explained above, this statement does not imply that Taasera (or Quest) is undercapitalized. Opp. at 9 citing Dkt. 21-12 at 20. The statement Palo Alto highlights

clearly states that a *hypothetical* monetary sanction issued by a court against Taasera may result in loss of the patents as they are the assets that would be used to cover the cost of a judgment. *Id*. Moreover, the statement says nothing about Taasera or Quest failing to pay an obligation, nor does it suggest that the patent assets would be inadequate for any speculative court ordered sanction.

Palo Alto's case law is misplaced, and even confirms that "a corporation is undercapitalized when its liabilities exceed its assets, requiring personal loans to meet operating expenses," which is not the case here. *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09 Civ. 6148 (VM)(MHD), 2012 WL 12932049, at *22 (S.D.N.Y. July 17, 2012), report and recommendation adopted sub nom. *Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012). Palo Alto's statement that Quest and Taasera share office space and cell phone numbers is blatantly false and, not surprisingly, unsupported. Opp. at 9.

Second, Palo Alto notes that Jon Scahill is the chief executive officer of Quest and a manager of Taasera, and that he used his Quest title and work email on a patent office filing. Opp. at 10. These facts are far from proof of domination, as Quest and its subsidiaries are small companies such that managers must wear multiple hats and take on duties for different companies. *Columbia Pictures Indus., Inc. v. Screen Gems Film Co*., No. 99 Civ. 4407, 2001 WL 1254838, at *10 (S.D.N.Y. Oct. 18, 2001) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit–Servs., Inc*., 98 F.3d 13, 17 (2d Cir.1996) ("[C]ourts recognize that with respect to small, privately-held corporations, 'the trappings of sophisticated corporate life are rarely present,' and we must avoid an over-rigid 'preoccupation with questions of structure, financial and accounting sophistication or dividend policy or history.'"). Allegations that parent and subsidiary share executives and managers are manifestly insufficient to establish an alter ego. *See, e.g., In re Adler*, 467 B.R. 279, 288 (Bankr. E.D.N.Y. 2012) citing *Dirs. Guild of Am., Inc. v. Garrison Prods., Inc.*, 733 F. Supp.

755, 760 (S.D.N.Y. 1998) (where one individual was the sole owner, officer, employee, director and thus the "sole decision-maker" of a number of corporations, all of which were operated out of the same office with the same telephone and fax numbers, the court found that "in the case of closely-held corporations these facts are not uncommon, and often create a scenario where a sole principal dominates corporate decision-making" and held the facts were not enough to pierce the corporate veil); *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 349-350 (S.D.N.Y. 2013) ("That a subsidiary shares employees, officers, and directors with a parent does not permit the corporate form to be disregarded."); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 (KBF), 2015 WL 892255, at *16 (S.D.N.Y. Mar. 3, 2015) ("It is commonplace for executives to hold several roles at several affiliated companies. But so long as separate corporate formalities are maintained, the mere fact that some employees of a parent are also officers of a subsidiary does not imply that the subsidiary is an agent of the parent.").

Third,

Palo Alto

cites the certificate of formation for Taasera and the patent reassignment, but these papers were executed before Taasera, a brand new start-up, acquired its office and principal place of business. Even if Taasera and Quest shared office space, it is not enough to find they are alter egos. *In re Adler*, 467 B.R. at 288 citing *Dirs. Guild of Am., Inc.*, 733 F. Supp. at 760 (finding no alter ego where one individual was the sole owner, officer, employee, and director of a number of corporations, all of which were operated out of the same office with the same telephone and fax numbers).

7

The factors Palo Alto avoided discussing in its response further support that Quest does not dominate Taasera. First, regarding corporate formalities, Taasera has always been a separate and distinct entity from Quest.

.

Fourth,

### C.    The Complaint Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6)

Palo Alto admits that its Amended Complaint only provides conclusory allegations insufficient to state a claim—"for each patent, PAN identified at least one specific limitation that is missing from the accused PAN products and included factual allegations that those feature(s) are not present in the accused products." Opp. at 12. The "factual allegations" Palo Alto refers to are *conclusory*, not *factual*, statements: "Palo Alto Networks' accused products do not infringe at least because they do not [perform one claim element]." Dkt. 21, ¶¶ 24, 28, 32, 36, 40, 44, 48, 52, and 54. Palo Alto's threadbare declaratory judgment claims, including only conclusory allegations, are precisely the type of claims this Court has held "plainly are not sufficient to state a plausible claim for non-infringement." *E&E Co. v. London Luxury LLC*, 1:20-cv-09610, 2021 WL 5357474

at *3 (S.D.N.Y. Nov. 17, 2021). Palo Alto's attempt to distinguish *E&E* fails, as the claim there stated precisely the same thing as Palo Alto's claims except that it alleged the entire claim was not infringed, instead of a single element. That Palo Alto narrowed down its conclusory allegations to one claim element, which it regurgitates, and states is not performed, does not transform the allegation to fact or render the precedence of *E&E* inapplicable. Beyond claiming that its products do not infringe, Palo Alto points to no actual facts and provides no factual allegations showing how the products do not infringe, which is plainly insufficient. *See Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, 319 F.R.D. 269, 273 (N.D. Cal. 2017); *Tannerite Sports, LLC v. Jerent Enters., LLC*, No. 6:15-cv-00180-AA, 2016 WL 1737740, at *4 (D. Or. May 2, 2016); *Pilot Inc. v. NOCO Co.*, No. CV-20-01452-PHX-SRB, 2021 WL 2188525, *4 (D. Ariz. Feb. 12, 2021); *Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, No. 16-cv-13456, 2017 WL 4535290, *3-*5 (E.D. Mich. Oct. 11, 2017); *PetEdge, Inc. v. Marketfleet Sourcing, Inc.*, No. 16-12562-FDS, 2017 WL 2983086, *3 (D. Mass. July 12, 2017). Accordingly, Palo Alto's complaint should be dismissed.

The cases relied on by Palo Alto are inapposite. In *Lopez*, the defendant explained *how* the specific claim limitations were not met by the accused products. *Lopez v. Fluidra USA LLC*, No. 3:21-cv-00044, Dkt. 19, ¶ 21 (S.D. Cal. Mar. 26, 2021) ("Additionally, and without limitation, the '041 Patent also specifically requires 'wedges formed between each of the apertures.' *Id*. at claims 3, 14. The '041 Patent specifically defines these 'wedges' in the detailed description as the 'inner end is narrower than the outer end, such that the wedge expands in width from the inner end to the outer end.' *Id*. at col. 5, lines 37-45, col. 6, lines 37-46. The alleged 'wedges' of the accused product are not narrower on the inner end than the outer end and do not expand 'in width from the inner end to the outer end.'"). In *Evolve*, the court explained that it is only "California district

courts [that] have found general denials of infringement sufficient." *Evolve Techs., LLC v. Coil Winding Specialist, Inc*., No. 18 Civ. 00671, 2019 WL 1383272, at *3 (S.D. Cal. Mar. 27, 2019). Notably, every case cited by Palo Alto on this issue is from California district courts, whereas the cases cited above by Taasera include district courts from six different states, including this Court.

## III.    CONCLUSION

For the reasons described herein, the Court should dismiss the First Amended Complaint for Declaratory Judgment for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

Dated:  July 21, 2022

Respectfully Submitted,

By: /s/ *Mark J. Rosenberg*
    Mark J. Rosenberg
    **TARTER KRINSKY & DROGIN LLP**
    1350 Broadway, 11th Floor
    New York, New York 10018
    Tel. (212) 216-8000
    Fax (212) 216-8001
    mrosenberg@tarterkrinsky.com

    ***ATTORNEYS FOR DEFENDANT QUEST PATENT RESEARCH CORPORATION***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 21, 2022, the foregoing was filed electronically with the Clerk

of Court to be served by operation of the Court's electronic filing system to all counsel of record.


<u>*/s/ Mark J. Rosenberg*</u>
Mark J. Rosenberg